Charles F. Claiborne,
Judge.

XETER REALTY LIMITED

VS

JOSEPH F. MARTINEZ,
Appellant.

No. 7861

December 3th, 1920.

XETER REALTY LIMITED

    VS                               No. 7861

JOSEPH F. MARTINEZ,
        Appellant.

    Appeal from Civil District Court, Hon. H. C.
Cage, Judge.

           CHARLES F. CLAIBORNE, JUDGE.

    This is an "action to establish title", under Act 38
of 1908, to the following described real estate, viz:

    Two lots of ground, situated in the City of New Orleans,
in the Square No. 1031, bounded by New Orleans, Grant,
(late Genius), N. Johnson (late Celestine) and Allen
(late St. Bernard), Streets, designated as lots Nos.26
and 27 on a plan of Grioux and Castaing, dated July 5th,
1852, deposited in the office of P.E.Laresche, late No-
tary; lot 26 measures 32' front on Allen Street, 116'
8'' 3'''  deep on the rear line on an oblique line,
by about 136' deep on the line of lot 27, and 213'
4'' 3''' deep and front on Genius Street; Lot 27 meas-
ures 63 ' front on Allen Street, 136'deep on the line
of lot 26, and 115' 8'' 4''' deep on the line of the
hypothenuse, said lot forming a rectangular triangle.

    According to a plan found in the record the location
of these two lots is as follows:

The plaintiff averred that it had acquired these two lots by act dated August 4th, 1905, registered in the Conveyance Office on January 25th, 1906, from the Auditor by virtue of Acts 80 of 1888 and 126 of 1896-; that these two lots had been adjudicated to the State for the taxes of 1882 and 1883, assessed in the name of Mrs. C. Auguste, according to two acts of A.A.Ker, late Notary, dated February 14th, 1885.

Plaintiff further averred that said two lots are now and have always been vacant; that Joseph P. Martinez is claiming said two lots by virtue of a sale made to him on March 12th, 1906 by the State Auditor under same Act 80 of 1888 and 126 of 1896.

Plaintiff prayed for judgment in its favor recognizing it as the owner of said two lots.

The defendant pleaded the prescription of three, ten, and thirty years based on continuous physical possession during those years. The plea was referred to the merits.

For answer, the defendant denied that the plaintiff was owner of the two lots, and denied that they had always been vacant. He averred

"that on May 31st, 1886, he acquired the said property at a tax sale made by the State in his favor as will more fully appear from the certificate and deed of that date made part of this petition (answer) and marked for identification "D 1"; that immediately upon said acquisition he took possession of said lots and has occupied them ever since. That again on March 12th, 1906, he acquired the same two lots *(1882)* from the State for State Taxes for the year 1905 as appears by act annexed marked "D 2"; that from 1886 to 1905 he has paid all taxes due the State for the years 1876 to 1905 as appears by suit No. 25,488 of the First City Court; and that from 1906 he has paid all City and State taxes on said lots; and he prayed for judgment in his favor recognizing him as the owner of said two lots."

There was judgment for plaintiff as prayed for.

After a refusal for a new trial, the defendant has appealed.

The first question presented is the prescription pleaded by defendant. We find no document marked D 1, referred to in the answer. All we find is a receipt, not identified by any mark or number, dated May 31st, 1886 from the tax collector to J. P. Martinez for one dollar as the price of adjudication of a lot of ground in Square No.1031, measuring 63 feet front on St. Bernard Street by 136 feet deep, for State taxes of 1878 and prior years, assessed in the name of Mrs. F. H. Cheval. Conceding that this receipt can be the basis of a title under Act 82 of 1804, it cannot be a perfect title unless it is shown that Martinez paid all taxes due on the property from 1880 to 1886. 42 A., 677, Martinez vs Tax Collector; 47 A., 914; 48 A., 52; 49 A., 855; 117 La., 331, 354; 43 A., 989.

This has not been shown. On the contrary, the State tax certificate dated December 17th, 1917 shows that the State taxes for the years 1885 and 1886 are still "due", and an affidavit in the record, subscribed by Martinez asserts

"that he has paid all taxes thereon, City and State from 1886 to date".

Besides, the tax sale for taxes of 1882 relied on by the defendant makes proof that he had not paid the taxes of 1882 at the time of the sale to him in 1906.

Neither do we find in the record Document marked "D 2". We find a document marked "Deft 3" which is an Act of sale dated March 12th, 1906 by the State Auditor to Jose P. Martinez of certain lots in Square 1031 measuring 62 feet front on St. Bernard Street by 136 feet deep - for unpaid State taxes of 1882, on the property of "Mrs. A. F. Cheval". This suit was filed on June 28th, 1917 and the defendant was cited on the next day - more than ten years after he had acquired title. Therefore the only prescription defendant can plead is that of ten years, if he took possession on the date of his title of 1906.

It is well to notice here that the property claimed by defendant and described in title set up by him measures 63 x 136, and corresponds in description with the lot No. 27 claimed by the

plaintiff. Therefore defendant does not set up title to lot 26 for which plaintiff is entitled to judgment as far as defendant is concerned.

On the question of possession the first witness examined on behalf of the defendant is Anthony Vegar. He says he is acquainted with lots 26 and 27 of Joseph Martinez; he examined the lots about two or three years; they were fenced in by Joseph P. Martinez; he was requested by Martinez to sell those lots; at the time he was in New Orleans, the lots were vacant.

The defendant J. P. Martinez testifies that after he bought the property in 1896 he had it fenced in, and put up signs for rent or for sale; he has paid taxes on the property; he has been in possession ever since and no one has disturbed him since he bought it.

The defendant is blind, and has been for many years previously.

Mrs. J. P. Martinez, wife of defendant, testifies that the property was fenced in by a man named Denis Mitchell, and Martinez rented it for a pasture to Bambeau and to Perez and they had to keep the fences in order; her husband has been in possession since 1886 when he bought and has never been disturbed; the only time she has ever seen the property is when there was a circus there, about 20 years ago. Neither the party who built the fence, nor the lessees have been produced.

J. P. Martinez, Jr., son of defendant, knows the lots well, was taken there by his father when a boy 11 years old; in 1913 there was a good fence around the property and a sign for sale; M. P. Arnoult, real estate agent, had charge of selling the property; ever since he knows himself there has been a fence around that property; people would take the fences and burn them up or steal them.

In rebuttal plaintiff offered three witnesses:

Joseph W. Lennox, a building contractor, director of Interstate Trust & Banking Co., says: In 1916 there were no fences around the square or the lot; he examined the property to make a report on the physical condition of the property and its value.

Armstrong Donaldson is a real estate agent; knows the

109

two lots 26 and 27; first saw them in 1911; had them in charge
to sell them for account of the Xeter Realty Co; there were no
fences whatever around the two lots, nor anywhere in the square,
open square, virgin soil; he put up the fences there in 1917
at the request of the Xeter Realty Co.; there were no fences
aount the square at all; it was vacant; the first fence put up
around those lots was in May 1917 by one Cousins to whom he gave
ten cents a running foot for doing it; at that time he put up
three fences around three lots in that square.

Joseph H. Ebert is a real estate agent, knows the two
lots because he owns property in the neighborhood; they were
fenced in about two years ago; for eight or nine years prior
they were vacant; there were no fences in the square; he used
to go across it upon a path nearly every Sunday.

The Judge below gave no reasons for judgment nor did
he, in his judgment, refer to the plea of prescription. But
it is evident that he overruled it.  As his opinion was based
upon the credibility of witnesses who testified in his presence,
it is entitled to much weight.  See the case of La.Building Co.
No. 7869 decided by this Court lately. Besides, the testimony
of Jos. P. Martinez, and of his wife, and of his son, is all
interested, and may be considered as one.  24 A., 332.  We are
accordingly bound to decide that the defendant never took physi-
cal possession of the lots.  139 La., 358.

The prescription of three years cannot avail as this is
not an attack upon a tax title under Art.233 of the Constitution.
The contention of plaintiff is that in 1905 the State sold to it
the two lots it claims, and therefore, could not sell them to
the defendant in 1906.

As we have seen the defendant bought lot 27 in 1906 for
the taxes of 1882. Did the plaintiff buy the same lot in 1905
for the same taxes of 1882?

By an act dated August 4th, 1905, Reg. C.O. January 25th,
1906 in Bk.204, ₱ 378, the State Auditor sold to the Xeter Realty
Co.

" A lot in square 1031, bounded by St. Bernard, New Orleans,
Celestine, and Genius Streets, measuring 98 feet front on

St. Bernard Street by one hundred and thirty-six
feet in depth" for taxes of 1882 assessed against
Mrs. C. Auguste".

This description evidently embraces the frontage of
both lots on St.Bernard Avenue, 32 feet for lot 26 and 63 feet
for lot 27 making 95 feet, and overlapping lot 27 claimed by
the defendant. But because it does, has plaintiff acquired a
title to it? It shows clearly a dual assessment; the corner
lot which measured 26 feet, 98 x 136 in the name of Mrs. C.
Auguste, and the adjoing lot 63 x 136 in the name of Mrs.A.
F.Cheval.

The chain of title of those two lots is as follows:

By act of P. E. Laresche dated February 17th, 1857,
Mrs. Fouche sold to Francois Escoffier the two lots 26 and 27
by the same description as that given in the beginning of this
opinion, with the exception that instead of Allen Street, the
Street is said to be yet unnamed.

Escoffier died; his Succession was opened under No.
28,845 of the late Second District Court.

By act of Abel Dreyfous of June 2nd, 1862, Hermogene
Cheval acknowledged having been put in possession of the undi-
vided half of the same two lots bequeathed to him and Isis
Ferrand by Escoffier.

By act of Abel Dreyfous dated November 9th, 1869,
Miss  Isis Ferrand acknowledged having been put in possession
of the undivided half of same two lots.

By act of P. Coudrain dated November 13th, 1869, Miss
Isis Ferrand sold to Mrs. Constance Auguste, wife of Hermogene
Francois Cheval, her undivided half of same two lots.

So that subsequent to November 13th, 1869, these two
lots belonged in the proportion of one undivided half each to
Hermogene Francois Cheval and to his wife Constance Auguste.

In the year 1882, the tax assessment of the square
was as follows:

| Owners | Description | Measurements |
|---|---|---|
| L. E. Faures | N. O. & Genius | 64 x 128 |
| Ls. Mestier | " | 128 x 128 |
| Pat Tolbert | St. Bernard | 30 x 64 |
| Mrs.A. F. Cheval | " | 63 x 136 |
| Mrs. Constance August | " | 98 x 115 |
| | | 136 |

By act dated August 4th, 1905, registered in the Conveyance Office on January 25th, 1906, the State Auditor sold to the Xeter Realty:  A lot of ground in the above square measuring 98 feet front on St. Bernard by 136 feet deep, assessed in the name of Mrs. C. Auguste.

It is evident that this sale embraces in its description, as far as its frontage is concerned, both lots 26 and 27, and, in its depth, the lot 27, to which alone defendant lays claim.

The assessment and sale were not of the undivided half of the two lots but of the whole of the lots, and, therefore. conferred a title by the State to the Xeter Realty Co. of the entirety of the two lots.  Having done so, the State could not subsequently sell the same two lots or any part thereof to another person for the taxes of the same year. 30 A., 432; 51 A., 251; 119 La., 245.—138 La 610—

The registry of the act to the Xeter Company took precedence over the sale to the defendant in 1906. 142 La., 611.

The assessment of the two lots in the name of Mrs. C. Auguste was sufficient to convey title.  28 A., 677.

But if there was any irregularity in the assessment of the two lots in the name of Mrs. C. Auguste, omitting her married name, and also the name of her husband, Hermogene Francois Cheval, her co-proprietor, this was cured by the prescription of three years under Article 233 of the Constitution, as we have seen that no one was in possession of those lots from 1905 to the time of filing this suit. 107 La. , 77; 109 La., 77, 642; 115 La. , 349, 1070; 117 La,, 353, 354.; 119 La., 1056;

138 La., 508, 525; 141 La., 247; 114 La., 282; 145 La., 350.

It is well settled that the prescription of three years runs in favor of the State holding under a tax title, and inures to the benefit of a purchaser from the State. 43 A., 873; 138 La., 508 (524).

Only the owner who has paid the tax under one assessment can take advantage of a dual assessment. 115 La., 351.

The defendant sets up title by virtue of a sale made to him by the Auditor on March 12th, 1906 of certain lots measuring 63 feet front on St. Bernard Street by 136 feet deep assessed in the name of Mrs. A.F. Cheval. Admitting the validity of this assessment it is evident that it was intended to embrace lot 27 which formed a part of the portion of ground assessed as measuring 98 x 115 - 136 previously sold to the Xeter Co., plaintiff herein. The District Judge was of that opinion and so are we, and, therefore, it was not in the power of the Auditor to sell the lot 27 to the defendant after he had sold it to the plaintiff.

Judgment affirmed.
December 6th, 1920.