DURFEE & CANNING, INC. *vs.* CHESTER H. CANNING.

JULY 20, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is an action of debt on judgment which was heard in the superior court on defendant's plea in abatement to plaintiff's writ and on the latter's motion for entry of summary judgment. That court overruled the plea and granted the plaintiff's motion. From such rulings the defendant has duly prosecuted his bill of exceptions to this court.

He contends that the above decisions were erroneous and relies on his plea in abatement which reads as follows: "And the defendant * * * comes and defends the wrong and injury, when, etc., and prays judgment of the said writ because he says that the issuance of said writ in the name of and on behalf of the said Durfee & Canning, Inc., a corporation, was not authorized by its Board of Directors in which the powers of said corporation are vested; And this the defendant is ready to verify; wherefore, he prays judgment of the said writ in this action and that the same may he quashed." Evidence on the above plea was submitted at the hearing in the superior court.

It appears from the writ, declaration, and the evidence that by virtue of a final decree which is in full force and effect and which was entered in the superior court of the commonwealth of Massachusetts on January 31 as of February 1, 1949 in a certain suit in equity pending in that court, following an opinion in *Durfee* v. *Durfee & Canning, Inc.,* 323 Mass. 187, the defendant herein was adjudged to owe and was ordered to pay the present plaintiff, a Massachusetts corporation, the sum of $236,490.43. This is the judgment sued on in the instant case.

The evidence further shows that the plaintiff corporation, which is engaged in the business of selling and distributing oil and petroleum products, has only four stockholders, namely William Durfee, Jr. and his daughter, who together own 50 per cent of its stock, and the defendant and his wife who own the other 50 per cent. These four persons constitute the board of directors of the corporation. Since about 1930, when the corporation was organized, Durfee has been president and assistant treasurer and defendant has been vice president and treasurer thereof. For many years the relations between them apparently were harmonious, but in 1945 difficulties arose regarding the conduct of the corporate business culminating in litigation in Massachusetts, and the defendant has not been active in the corporation with the exception of signing certain salary checks as treasurer. Also since 1945 there has been no meeting of the board of directors or the stockholders and no calls for such meetings have been made.

In addition there was testimony to the effect that no such office as general manager was provided for in the by-laws of the corporation or otherwise, but Durfee testified that for a long time and particularly since 1945 he had acted as general manager and performed the duties of such a position. The witness stated that the commencement of the present case in the name of the corporation was authorized by him as president thereof; that he employed the attorneys for that purpose; that there was never any meeting of the board of directors at which such action was authorized; that no such meeting was called for that purpose; that both before and after 1945 on occasions he employed attorneys to institute law suits in behalf of the corporation to collect money due it from business transactions; and that, although aware thereof, the defendant never raised any question as to his conduct in that respect.

The following portions of the by-laws of the corporation respecting the duties and powers of certain of its officers were read into the record: Article 3: "The directors shall

have and exercise all the powers of the corporation except such as are required by law or by the by-laws of the corporation to be exercised by the stockholders. They may choose, appoint and remove all agents and officers other than the president, vice president, director, treasurer. They may fix the compensation of the treasurer and other salaries, including their own. They shall have access to all the books, vouchers and funds of the corporation or of its officers or servants. * * * There shall be regular meetings of the board of directors once every three months and as much oftener as they may determine. Special meetings may be called by order of the president or upon the written request of any three directors. At all meetings a quorum shall consist of not less than three directors. Special meetings of the stockholders shall be called by the clerk whenever he is requested so to do by the board of directors or in writing by stockholders representing one-tenth of the capital stock of the corporation. The notice of the meeting shall disclose the purpose for which the meeting is to be held." Article 4: "The president shall preside at all meetings of the stockholders and directors, shall sign all certificates of stock, and under the supervision of the directors shall have general care and direction of the affairs of the corporation." The article of the by-laws relating to the duties and powers of the treasurer has no bearing on the question raised here.

The validity of the Massachusetts judgment now sued on is not in issue. Moreover at the outset the plaintiff contends that the question of whether the board of directors of the plaintiff corporation had taken action to bring the instant case was not a proper subject of inquiry for the court under the plea in abatement. In support of that position the plaintiff relies on *New England Transportation Co.* v. *Doorley*, 60 R. I. 50, which was an action of trespass and ejectment. We are of the opinion that it is clearly distinguishable from the present case and is not controlling here. In the cited case the point arose in connection with an evidentiary question, and it clearly appears that the

plaintiff there was actually before the court prosecuting its action by its duly authorized counsel.

On the other hand in the case at bar, while there is no claim that plaintiff's counsel improperly represents it, the defense raised is that the president of the plaintiff corporation had no authority by virtue of his office alone to start the instant proceedings. Furthermore the present plaintiff is not yet in court, having been confronted at the outset by a plea in abatement to its writ, whereas in the *New England Transportation Co.* case the plaintiff was actually and fully in court. It is our opinion that the point under consideration is in the circumstances and under the plea a proper subject of inquiry.

In passing upon the defense set out in said plea the first question met is whether, in the existing circumstances, the president of the plaintiff corporation by reason of his office had power to institute the present proceedings. The authorities on that general question appear to be in sharp conflict. They are referred to at some length in *Elblum Holding Corp.* v. *Mintz,* 120 N.J.L. 604, in which case the facts resemble to a considerable degree those disclosed by the present record. In the light of certain provisions of the New Jersey law as to corporations and on the facts before it the court in that case held that the president of the plaintiff corporation could without any vote from its board of directors employ counsel to institute necessary legal proceedings. In our judgment this would be especially true where the action taken was clearly for the benefit of the corporation and the exercise of the power was in the normal course of business as established by previous custom. See also 48 Yale L.J. 1082.

No case in this state directly in point on the above question has come to our attention. However, in *De Pasquale* v. *Societa De M. S. Maria,* 54 R. I. 399, the court held that the power of an officer of a corporation to bind it is governed by the general law of agency. In circumstances where, because of an emergency created by the action of its

president, such corporation was unable to take formal action to defend a suit against it, the court found at page 402 that "In the circumstances we are of the opinion that the respondent officers had implied authority to act for the society in the employment of counsel."

In respect to the authority of the president of the plaintiff corporation it is argued by such corporation that the questions raised herein should be determined by the law of the forum, namely, this state, whereas the defendant maintains that the general corporation law of the commonwealth of Massachusetts as it appears from its decided cases, apart from its statutory law, is controlling since the plaintiff is a corporation created by that state. For the purpose of this case we will assume without deciding that defendant's contention on this point is correct.

Two cases from that state have been called to our attention as bearing on the questions now before us. They are *Lydia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53, and *Kelly* v. *Citizens Finance Co. of Lowell, Inc.,* 306 Mass. 531. The first-named case was before the court on a demurrer to a bill in equity brought against certain officers of the complainant corporation. One of the questions raised related to the authority of the president of the corporation to sign the bill of complaint with the corporate name without an averment that he had authority to act for the corporation in bringing the suit. The bill disclosed a situation where the directors were deadlocked between two equal factions. A by-law had been passed by the directors providing that the president as the complainant's chief executive officer "is hereby authorized and instructed to ·exercise general supervision and control over the various departments of the Company's business * * *."

The court overruled the demurrer stating at page 64 of the opinion: "It seems to us that the intent of the vote was to give the president general charge of the business as a whole, subject of course to the power of the directors to give specific directions from time to time or to modify or

recall the grant. * * * We think that the power to institute this suit as the suit of the corporation under these unusual circumstances was delegated with the general grant of managerial power and that the president was not obliged to resort to the indirect method of a stockholders' bill to accomplish the same results."

The second-named case was an action at law brought by an attorney to recover for legal services rendered defendant in contesting a suit in equity whereby a stockholder sought the appointment of a receiver and a dissolution of the corporation. The court sustained exceptions to a verdict for the plaintiff. It held that one who was president, treasurer and one of two directors of the corporation had no authority merely by virtue of his offices to agree to pay the plaintiff a specified amount to defend the receivership suit. At page 532 of the opinion, in reference to the president, the court stated: "There was no evidence that he exercised powers of general management over the corporation or that he habitually attended to such matters as the defence of law suits." It also held that the authority to manage the business affairs of a corporation is primarily vested in its board of directors, and at page 532 stated: "In the cases in this Commonwealth in which a president or a treasurer has been held to have general authority to make contracts it will be found that such authority has been delegated to him either expressly, by means of some by-law or vote of the directors relative to the matter in question or granting to the officer the powers of a general manager, or impliedly by reason of his continued exercise of similar powers in such a manner that knowledge and approval of the directors or of a majority of them can reasonably be inferred. * * * In the present case these requirements are not met."

In our judgment the two Massachusetts cases are not in conflict. The general rules governing the respective authority of corporate officers and of directors in the ordinary case, and also the requirements necessary to give such officers

added authority in particular circumstances, were set out in the *Kelly* case, which was held to be governed on its facts by the application of the general rule. However, in the *Pinkham* case the court deemed there were sufficient circumstances to justify a finding that the president of the corporation had more than the usual powers of that office in view of the background and history of the corporation as it appeared in evidence. Upon consideration it is our opinion that while the instant case is not on all fours with either of the above cases it plainly more nearly resembles the *Pinkham* case.

In the case before us the by-laws provided that the directors should have and exercise all the powers of the corporation except such as were required by law to be exercised by the stockholders. That general provision undoubtedly placed in the directors broad corporate powers. Another by-law, however, provided that the president should have general care and direction of the affairs of the corporation under the supervision of the directors. That by-law is clearly of the same general tenor and effect as the one in the *Pinkham* case upon which that court largely relied in reaching its final decision. Here as in that case the directors did nothing to supervise the president in respect to his bringing of the instant action and gave no direction in connection therewith.

Furthermore in the *Pinkham* case the court stated at page 65: "If this suit were brought in the ordinary course of business, we should have no doubt of the authority of the president to bring it." We are of the opinion that the case at bar was started by its president, in the performance of his duty, as a usual and necessary act in the ordinary course of the plaintiff corporation's business. While it is a fact that the defendant is treasurer and a director of the plaintiff corporation he is not being sued here in those capacities. He is merely a judgment debtor of the plaintiff and this action is instituted, as we see it, only to collect a debt which has been already found to be due to plaintiff.

Finally the trial justice found that the president had run the plaintiff corporation since 1945; that the other directors and stockholders had knowledge of that fact; and that they impliedly authorized the president to so act. An examination of the evidence shows clearly that after 1944 he employed counsel when necessary, instituted litigation on behalf of the corporation in order to collect money owed it in the ordinary course of its business, and that defendant never questioned that practice. It is our opinion that the above findings of the trial justice were not clearly wrong. See *Dome Realty Co.* v. *Gould,* 285 Mass. 294.

In view of the circumstances appearing herein, including the by-law defining the president's powers, the findings of the trial justice, and the pertinent principles of law to which we have referred, it is our judgment that the president of the plaintiff corporation had authority to institute the present case in the absence of a vote of the board of directors of such corporation directing him to the contrary. We find therefore that the trial justice did not err in overruling defendant's plea in abatement and in granting plaintiff's motion for summary judgment.

The defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the plaintiff in accordance with the decision.

*Letts & Quinn, Arcaro, Carty & Belilove,* for plaintiff.

*Gardner, Day & Sawyer, Edward W. Day, Charles F. Cottam,* for defendant.